May it please the Court. My name is John Hawley. I'm representing the appellant, Arthur Bell IV. You know, actually, just a minute. Your co-counsel is just setting up. Oh, I'm sorry. That's all right. We'll just wait another second. Okay. We're ready. I'm sorry. May it please the Court. I'm John Hawley. I'm representing the appellant, Arthur Bell IV. This is a case where the real question is whether or not summary judgment should have been entered on the evidence that was presented in support and in opposition to the motion. We believe that a significant issue of material fact exists in this case regarding the timeline for whether or not the Nye County School District received prior notice of their substitute teacher, Brian Lepley's, sexual conduct with students at the high school. This is a case, Your Honor, where Mr. Lepley was initially hired for the 1995-1996 school year as a substitute teacher. During the 1995-1996 school year, he was let go as a substitute teacher for making offensive and crude remarks during class at a middle school. Mr. Lepley then instituted a letter-writing campaign to the superintendent, Ms. Harge. Did he also write to Mr. Hill, or was it only to Ms. Harge? I believe it was only to Ms. Harge. Ms. Harge was the one who had the ultimate authority to hire him back. Anyway, he wrote the letters to Ms. Harge. Ms. Harge incredibly testified that, you know, she just got sick of him, essentially, and she didn't investigate why he had been taken off the substitute list, but she reinstated him for the 1996-1997 school year. In 1997, towards the latter part of the year, Mr. Lepley befriended several students at the Nye County, at the Pahrump Valley High School. Among the students he befriended was Arthur Bell IV. Mr. Lepley would provide Mr. Bell with slips to get out of class. He would give him cigarettes to smoke. He would provide him with drugs and alcohol, and he would do that with several other friends as well. In the evening, let me back up. During the spring of 1997, a teacher at the Pahrump Valley High School, Mary White, was also teaching a computer class on Saturdays for the Clark County, I'm sorry, the Community College of Southern Nevada. It was a computer class. It was on Saturdays. After one of those classes, according to her testimony, a student came up to her and said, hey, another student in your class, Brian Lepley, is a substitute at the high school, and he's also having sex with students, and I'm concerned. Mrs. White testified that the following Monday she reported this incident to the principal of the high school, Mr. Hill. The question in this case is very simple. It is when did Mr. Hill get the notice that Mr. Lepley was having sex with students at the Pahrump Valley High School? Now, both parties in this case are relying on essentially the same quote from Mrs. White. It's her deposition testimony. It's contained at record page 136. Question, did Mr. Weiberg ever tell you about Mr. Lepley having inappropriate relationships with students? Answer, yes, he did. Question, when did he do that? Answer, I believe it was our, I know exactly, it was one week before Mr. Lepley was arrested. I do not remember the date. It was on our Saturday class. He pulled me aside after everybody left, and he told me that he was very concerned that he had heard this. Now, Mr. Lepley also testified, or I'm sorry, Mrs. White also testified that Weiberg specifically informed him, her, that Lepley was having sex with students and that he also mentioned Arthur Bell IV's name. And on your evidence, that can't be true. That's right, Your Honor. Because on your evidence, if it's believed, the last, she could have taught a class no later than the 10th of May. I'm sorry. On your evidence, if it is to be believed, she could not have taught that class later than Saturday the 10th of May. That's correct, Your Honor, and that was one week prior. And further, on your evidence, she wasn't, she was absent on that Monday, the 19th. That's correct. Okay. That's correct. And that's where we are. But on your evidence, how far back do you push Ms. White having told Mr. Hill? Well, we, I take Ms. White at her word for telling Mr. Hill the following Monday. The Pahrump Valley High School has had several rather high-profile incidents in the last 10 years of student, teacher-on-student sexual relations. And Ms. White has taught at that school for a long period of time. So I take her at her word. You take her at her word. Well, I take her at her word that she went, you're right, Your Honor. You're right, Your Honor. I take her at her word that she reported it to Mr. Hill the following Monday. The question is when. Mr. Simmons testified that Ms. White missed the last two classes and possibly the final exam. We can push that back to a maximum. You know, the earliest under that testimony that Mr. Hill would have had notice of this inappropriate conduct was May 3rd of 1997, which is two weeks before the May 16th, 1997 sexual assault incident on the Tacopa Road. So consistent with your evidence, not compelled by your evidence, consistent with your evidence is that the last class she taught on the Saturday was May the 3rd. It could have been May the 3rd or May the 10th. It certainly was not May the 17th. But your evidence wouldn't support a finding of May the 3rd. Absolutely, Your Honor. Absolutely. And frankly, the Nye County School District is focusing on one portion of Ms. White's testimony that she told Mr. Hill a week before he was arrested, a week before Mr. Lefty was arrested. And if we were stuck only with Ms. White's testimony, we would be dead in the water here. But we have the testimony of Dan Simmons and Ben Potter here. Okay, but let me make sure I understand. To follow up on Judge Fletcher's question, you don't dispute that she told Hill the following Monday. No, I have no reason to do that. But you do dispute her testimony that she told him a week before Lefty was arrested. That's correct. That's correct. And I don't know how inconsistent that is. She may – I don't know what her motivations were. Sometimes people say things that are true, and then they say things that aren't true. And I guess the jury gets to decide what part of her story, if any, is true. That's correct, Your Honor. And all we're asking for is a chance to present the evidence to a jury and let them decide who is credible. You know, the district court is not there to weigh the credibility or the weight of the evidence. They're not there to – on a motion for summary judgment, certainly. And here, Your Honor – There's a reference to the incident on the road, and I know you had an explanation for that. But, in other words, somewhere in her references, it's – there's a reference to an incident on the road. It would have occurred later than you would report. I don't understand your question, sir. Well, there was a – let me get the name of the road. I'll get my glasses on. There's a mention of the person who reported to her. Oh, I'm sorry. Yes, David Weiberg testified, or the person who reported to her – and this is actually in the Nye County brief – that the Tacopa Road – about Tacopa. And the question is, how could he have reported something that hadn't occurred yet? You know, the only sexual incident that we know about is the one on Tacopa Road on May 16th. There was a second one at the Tacopa Hot Springs on May 23rd. We don't know where Mr. Lepley was taking students beforehand, but I would think that he is a creature of habit. And, again, this can be brought up to a jury, that he was doing things on the Tacopa Road and at the Tacopa Hot Springs. They're both – the Tacopa Hot Springs is, I gather, a very popular place outside Pahrump for, I guess, alternative lifestyles. Have you got a witness who's going to testify that there's more than one incident on Tacopa Road? No, no. This is an inferential argument. This is an inferential argument. It's a fair inference, Your Honor. The argument, as I understand it, is Wilbur comes in and says he's having sex at Tacopa. That's my understanding of the testimony, yes. Hang on just a second. And Tacopa, it seems to me, is more likely to refer to Tacopa Hot Springs than the road named Tacopa. That would be my assumption, yes. And it's an inference in your argument, then, okay, well, he's having sex with students at parties at Tacopa, that is to say at the Hot Springs, but he is not necessarily referencing the incident that took place on the 23rd. Indeed, on your evidence, he could not have been. That's correct. And that's because he talked to her at the latest on the 10th of May and could have talked to her on the 3rd, under your evidence. And further, Mr. Bell's description of what happened on the 23rd at Tacopa Hot Springs does not include sex. That's true. Okay. That's true. Ms. White testified essentially that Weiberg was – that Weiberg told her that Lepley was having sex with students and that she specifically mentioned our – and then she specifically mentioned Mr. Bell. I don't know – an inference can be made that Mr. Lepley was having sex with other students and Mr. Bell was involved in this group that Mr. Lepley was involved with as well. Did I distract you from what – oh, I'm sorry. Well, you may need some declarations. Pardon me? If you're saying that Mr. Bell may have been involved in those earlier incidents or something. No, no, no. What I'm saying is what Mrs. White testified to. Mrs. White testified that Weiberg told her that Lepley was having sex with students and he also mentioned Art Bell. Not necessarily that he was having sex with Art Bell at that time. In fact, Art Bell, the first sexual incident that we know about is May 16th of 1997, which is the incident on the Tacopa Road. Can I ask you about something that may deflect you from your main line of argument? But it struck me as I went through the record. We have a deposition from a police officer, Lieutenant Beck, to the Nye County Sheriff's Office. Actually, I think that's trial testimony. Trial – is that trial? That's trial testimony at Brian Lepley's criminal trial, his first criminal trial. Criminal trial. Okay. So Mr. Beck testifies at the criminal trial of Mr. Lepley. I'd like to direct your question – I'd like to direct your attention to May 27th of last year. Now, that's one day before the actual arrest. That's correct. Approximately 3.30 in the afternoon, do you recall being contacted by Jerry Hill, the principal? Yes. And what was that in regard to information he received of a teacher possibly molesting students? And what, if anything, did you do? He had a confidential informant. I asked him if he would see if he or she would come forward with the information. Were you able to ascertain whether or not that person would? Yes, he called me back. I don't know, five or ten days later, under that line, he calls him back after the arrest. Precisely. And then, what do you – he says the informant would cooperate. At that time, let me direct your attention to a half an hour later that day, that is to say on the 27th, because we're at 3.50, it's not that day, the day that the informant – that Hill calls back. Do you recall coming into contact with the Bell family? Yes, sir. Then he talks to the family, and it doesn't get very far until he's just about to leave, and then young Bell, Arthur Bell IV, the plaintiff here, comes out and says, I'd like to talk to you, and then he gives them the name of Lepley. The arrest occurs the day afterward. How does that fit in? Those dates are completely inconsistent. I don't know how they fit in. Inconsistent with what? Well, they're inconsistent with his arrest date. If he says that Jerry Hill talked to him on the 27th and then called him back 10 days later, that would be nine days after Mr. Lepley was arrested. Well, and that's what it means that that's possibly inconsistent then with Jerry Hill's testimony. Counsel, did you get any discovery that Nye County Sheriff's follow-up reports on this investigation? No, we didn't. What happened, it remained an open case. Mr. Lepley's case was on appeal during the discovery phase. His case was reversed by the Nevada Supreme Court, and, in fact, as far as I know, his second appeal is now at the Nevada Supreme Court. We have also been precluded from taking Mr. Lepley's deposition until after his appeals processes are over because of Fifth Amendment concerns. So. His second appeal, he was. . . It's currently pending in the Nevada Supreme Court. He was convicted. That was set aside. He was convicted again? Yes. Okay. And was he convicted? I saw some of the stuff on the record, and I didn't see he was convicted for any of his behavior with Mr. Bell. I gather he was convicted for other things. He was actually convicted for intentional attempted intentional transmission of the HIV virus. That was with Mr. Bell. And he was also convicted, I believe, of attempted murder resulting from Mr. Bell because of his HIV status. Well, no, there's testimony from somebody else of actual intercourse with Mr. Lepley. I thought that might have been it. There was somebody else, too. Okay. That's my understanding of the criminal proceedings, Your Honor. I got it. Okay. At any rate, it's our position that there is a grotesque factual dispute as to when the Nye County School District received notice of Mr. Lepley's conduct. Okay. Everything you've said so far makes perfect sense to me, and here's the hard part for me. Okay. Assuming that we're willing to go along with you, that your evidence would support that Ms. White heard this on the 3rd of May, Saturday. She reports this on Monday, as she says, although on a different date, Monday the 5th. Jerry Hill does not call the policeman until the 27th. The policeman does the actual investigation that results in the arrest. Right. And Wilberg, he doesn't learn the name Wilberg until five or ten days later after he calls him. Okay. Assuming all that is true, does that meet a standard of deliberate indifference, not merely a standard of negligence? Yes, it does. Why? Because we have a statute in Nevada, I believe it's NRS 432B.200, that requires a school administrator, a librarian even, or a school bus driver, to report within 24 hours any suspected incident of abuse or neglect of a child. That would encompass sexual abuse, Your Honor. Is a violation of a Nevada statute requiring prompt behavior, deliberate indifference? I believe it is. Because there's a Nevada statute or just because in any event it is deliberate indifference? Well, I would say both. I would say that, you know, one or two days can be forgiven in a situation like this, but when you're going out ten days, possibly, you're looking at deliberate indifference. What happened with Mr. Hill? Mr. Hill testified that when Mrs. White talked to him and told him about her concerns, he said, well, who's involved? He said, I didn't recognize any of the students' names, so I didn't think they were Pahrump Valley High School students. Which is inconsistent with his telephone call to Sheriff Beck. Exactly. Okay. And also he testified that what happened afterwards, he went to Tonopah for a meeting. Now, the Nye County School District says they have this great sexual harassment policy. They have their officer up in Tonopah to address concerns of sexual harassment. He went to Tonopah. Did he discuss it with the sexual harassment officer? There's no evidence of anything that happened. Now, it's a two-hour drive to Tonopah or a three-hour drive to Tonopah, Your Honor, and if I had just gone to Tonopah after receiving word that one of my substitute teachers was molesting a student, I would be thinking about that the entire way to Tonopah, and the first stop that I would make would be the sexual harassment officer. I would also tell the superintendent, who claims that she didn't know about the problem with Mr. Lepley until he was arrested. My God. Nothing was done for up to two weeks. He does one thing, or at least according to his testimony, he does one thing. He tells the secretary, put him on the don't call list. He did. But he apparently says it orally, and a substitute secretary then calls him. Yeah, I was going to say that was a rather feckless thing for him to do because he was called back several times. In fact, he was put. Although there's no exposure then. I mean, that was bad, but it didn't have anything to do with your plaintiff's injuries, I gather. Well, actually, if you look at the Nye County School District pay records, Mr. Lepley worked on both the 16th of May, 1997, and the 23rd of May, 1997, the dates of the two instances involved. And I believe that he worked at the Rosemary Clark Middle School on one of those dates, and forgive me if I don't recall which one it was. On your version of the evidence, if he hears this on the 5th of May, prompt action on his part would have kept Lepley out of school. Absolutely. He's the one who put him in jail before either the 16th, the first incident, or the 23rd, the second incident. Well, he certainly could have made it known to the authorities who would have made it known to Lepley that we have a problem here, and the assaults on the 16th and the 23rd would have been avoided, Your Honor. And that's what we're looking at here. And what happened? He did nothing. He did nothing. If doing nothing doesn't rise to the level of deliberate indifference, I don't know what does. Okay. Counsel, before you sit down, I'd like to ask you on the negligent hiring claim. Yes. I'm reading a line out of Doe v. Estes. Are you familiar with that case? It's the District of Nevada decision interpreting the 1996 decision interpreting Nevada state law, and it involved a suit against a school district where the court says, here the discretionary function was the hiring of the teacher. Why doesn't that bar your claim for negligent hiring? Because in this case, there was a specific statutory prescription for getting the particular sexual or the particular criminal records of Mr. Lepley, and that was too long. But negligent hiring is the basis for immunity under Nevada law. What difference does it make that there was perhaps a breach by the Nevada Highway Patrol in failing to forward the fingerprint cards to the FBI? It's not only a breach by the Nevada Highway Patrol. We're talking about a breach by the Nye County School District. The fingerprint card came back to the Nye County School District. I think we're talking about two different things. We may be, Your Honor. The case says that the act of hiring is statutorily immune, that the state has not waived its sovereign immunity for hiring. So it really doesn't matter what the statute says with regard to the background investigation. If immunity hasn't been waived for the act of hiring, then it applies and you have no claim. Well, I wasn't familiar with that case, but I'm not sure that that case was decided in the context of the statutory prescription for hiring teachers and educational personnel. All right. Thank you. Thank you, and we'll give you a minute at the end. Good morning, Your Honors. Paul Anderson, representing the appellees in this case, Geraldine Harge, Jerry Hill, and the Nye County School District. Your Honors, this case is a case that comes to you following the grant of summary judgment, and this was a proper case for summary judgment to be granted. The case is controlled by the United States Supreme Court of Gessber v. Lagavista Independent School District, in which the United States Supreme Court addressed Title IX claims of sexual harassment or discrimination and determined that there's a two-part test that somebody making such a claim needs to show. First of all, its actual notice must be given to an official who, at a minimum, has the authority to address the alleged discrimination, and secondly, that following that notice, the district acted with deliberate indifference. Here, Mr. Hawley has argued at great length, has raised the issue both with the district court below and now on appeal concerning the issue of actual notice and the discrepancy he alleges with respect to the testimony of Mary White, the substitute teacher, and Jerry Hill, the principal. Was Mary White a substitute teacher? I'm sorry, not substitute. She was a regular education teacher. She also was a bit confusing, but not really, is that Mary White was a full-time teacher for the Nye County School District in the part school. And part-time at the community college? Correct. She had a Saturday computer class that she taught at the community college. There's not inconsistency with respect to that testimony. Can I cut to the chase for me? Can you tell me why the plaintiff's evidence cannot support, I don't say you have to conclude from it, but cannot support a finding that Ms. White was notified on Saturday, the 3rd of May. Jerry Hill was notified on Monday, the 5th of May. Why doesn't the plaintiff's evidence support that conclusion if a jury wants to come to that conclusion based on the evidence we have in front of us? The reason it does not support that conclusion is because you have to infer completely from that testimony, you have to eliminate other testimony that Mary White has already given. Well, no, I'm sorry. Inconsistencies in the evidence don't matter on summary judgment. We take the part of the evidence that's most favorable to the non-moving party. So merely the fact that there's inconsistent evidence, and there's a lot of inconsistent evidence doesn't get me where you want to get yet. Okay. Okay. If I may, the testimony of Mary White needs to be viewed in its entirety. Okay. But I'm not getting the date of May the 3rd from Mary White. I'm getting that date from the testimony of Potter and Simmons. That's correct. Yeah. So why is the May the 3rd date not supported by the evidence such as would allow a jury, not compel, allow a jury to find? That was the date on which David Wilbrick communicated with Ms. White. I don't know if I'm following your question, and I'll attempt to answer it as best I can. And what I wanted to point out is that Mary White indicated in her testimony that she reported to Mr. Hill. She knew exactly when she reported to Mr. Hill. I believe those were her terms. And we asked her when was that, and she indicated that was one week prior to Mr. Lepley's arrest. Yeah. But that can't be true because on the Monday she says she did the report, the 19th, she was absent. That's correct. Isn't that right? She was absent on that Monday. She was absent on that Monday. But I'm still not asking what Mary White said at the moment because Mary White may indeed contradict what Simmons and Potter say. I'm asking what was a jury entitled to infer from or conclude from the testimony in Potter and Simmons. They seem to me to say that the last day she taught was Saturday, May the 3rd. Why isn't the jury entitled to believe that? Well, first of all, with respect to the summary judgment standard, the plaintiff had a duty of coming forward with evidence that would create an actual genuine issue of fact. Mary White's testimony was the testimony that's relied upon by Mary White is that she told Principal Hill one week prior to the incident. You may or may not be taking my point. Mary White's testimony is inconsistent, at least as we have it, with the testimony of Mr. Potter and Mr. Simmons. That's correct. But that in itself doesn't get you very far so long as the testimony of Mr. Potter and Mr. Simmons is probative and credible. But we don't do credibility in the sense of, you know, just a contradiction. That doesn't get you where you need to go. So I ask again, and maybe the word impassable doesn't matter. Well, Mr. Potter was the student, I believe. Correct. Mr. Simmons was the administrator for the community college system. Mr. Simmons was testifying from a document that was an unauthenticated document that was used in support of the opposition to the motion for summary judgment. And Mr. Potter was an older gentleman who had taken this class, had, you know, indicated that that was the best of his recollection. Well, I'm sorry. You did not include this page from his deposition in your excerpt. So it was included in the other, page 7, where he says, two, I am sure. There's lots of other things he says, I'm not sure. But he says two weeks, I'm sure. Do you need me to read it to you? No. You probably don't. Yeah. Okay. Perhaps that could create an issue of fact, but I don't believe that it does when the Court looks at the totality of the evidence and the admissible evidence that came in with respect to the motion for summary judgment as well as the opposition. Again, I'd like to ---- The testimony of Potter and Stewart at Simmons is admissible, isn't it? There's no grounds to exclude that testimony. No. Not their testimony, but ---- So if we view that testimony in light most favorable to the plaintiff, don't we have a genuine dispute over a material fact as to when the school district obtained actual notice that there was a problem with the substitute teacher involving sex with students? Well, you may have that, but the guesswork court requires you to then go to the next point, which would be deliberate indifference. And I'm not conceding that necessarily there was actual notice. But assuming for purposes of argument here, if there was actual notice and if that were to be believed, then we need to look at what the district did. And again, the testimony would be very inconsistent with respect to when actions were taken. Mr. Hill made it quite clear that he, when he spoke with Mary White, he asked her immediately to have this confidential informant come forward and ---- Now, again, I'm taking evidence that's not most favorable to you. I'm taking evidence in the record that's most favorable to Mr. Bell. And I take that to be that Mary White heard this on the 3rd of May. She reports it the following Monday, as she said, on the 5th of May. But according to Sheriff Becht, we don't get a telephone call to the authorities from Mr. Hill until the 27th, the day before Mr. Lepley's arrest. Now, that may or may not be believed by a jury. I'm not ---- I have nothing to say about that question. But if that is true, why ---- I mean, and this ---- I'm not playing any games. This, for me, is the hard part of the case. Why ---- tell me about whether that, in your view, is or is not deliberate indifference. I'm assuming you're going to say it's not. Tell me why not. The delay being between the 5th and the 27th? Correct. 22 days? Yes. Your Honor, again, if that were to be believed, and I don't believe that a jury necessarily would, but that's not ---- that's not relevant here. Right, right, right. There's potential that that could be ---- there could be a finding with respect to deliberate indifference. However, deliberate indifference requires turning a blind eye, Mr. ---- I'm not sure you said exactly what you mean to say. You just said that could support a finding of deliberate indifference. If that's so, you lose for purposes of summary judgment on that issue, too. I think you have to say in order to keep your summary judgment, it would ---- even on those facts, that a reasonable jury cannot find reasonable deliberate indifference. And that's the point I was getting to here. Deliberate indifference requires a finding that the district had knowledge and that they turned a blind eye with respect to that knowledge to what they had learned. And the evidence in the record does not support that at all. The record supports the finding which the district court made, that the district acted immediately upon the knowledge. No, you're giving your evidence, which the jury may well believe but may not. Under the evidence that I think Mr. Bell has, they did not act immediately. Mr. Hill learns of it on the 5th and makes the phone call on the 27th. Well, and as I said earlier, if you look at it in that light, then I don't know how to respond to your question other than to look at what Mr. Hill said he did, what Ms. White said he did, that sort of thing. Well, the one thing I don't know that there's a conflict on is he says that right after learning he said don't, you know, take him off the substitute list. Right. And that might have been done quickly. And, of course, it got messed up. It wasn't done maybe thoroughly enough. Maybe that's negligence. I don't know. I don't know whether it's deliberate indifference. Right. Nor do I know whether that's enough. Well, he did take that action, and he also pled with Ms. White to have this confidential informant come forward, identify himself and come to Mr. Hill with the information. Otherwise, he was acting on nothing more than hearsay upon hearsay. He had no idea who this individual was. Public school districts are always caught or are often caught in a Catch-22 situation. You know, you hear a rumor, do you immediately act on that rumor and take decisive action against an employee when, in essence, what you end up doing is violating the rights of that employee, and then now you have that lawsuit as opposed to this. So he acted reasonably. He acted immediately. He acted swiftly with respect to the information which he had received. And that information was that Lepley was having some sort of improper contact with students after hours on Tacopa Road that might involve sex. Well, I believe what the testimony was from Mr. Hill is that Ms. White had told him that he was having – that there was improper sexual conduct going on. However, I believe that she had indicated that it was with middle school as opposed to high school students. And – But the suit is against the school district. You're not taking the position that – No. The principal upon receipt of that report would have no obligation to tell the school district. No. No, I'm not. The principal of the middle school. I'm not. But, again, it was an unfounded rumor when it came forward because the informant who came forward with the information, Mr. Weiberg, had not revealed or had told Ms. White that he did not want his identity revealed. As indicated earlier, Mr. Hill took the action of indicating to the office not to call this Mr. Lepley as a substitute anymore, and he was not called. There's a few other points that I – But he was called. Well, he was called erroneously on the day of his arrest by a substitute teacher. And depending on the timeframe, if it was true that he was notified on the 5th of May and Mr. Hill is misremembering the dates and he's instructed the substitute person not to call, he was called on more than one occasion after the 5th of May. That would be correct. Okay. But the testimony in the record – He'd been to the middle school, right? Well, I think only to the – it was probably only to the high school. He was only in the high school – He'd been at the middle school earlier in the year. He only substituted a total of four days in the spring semester at the high school. Okay. I think what's important for the court to look at also in reviewing the Title IX cases is the actual facts of this case that are undisputed. There's no indication in the record anywhere that any of this improper sexual contact or conduct by Mr. Lefley ever occurred at the school district. None ever occurred during school hours. And, you know, what the plaintiffs are basically asking is that the school district be, you know, somehow have responsibility beyond even what it has today. Doesn't the school district have a sexual harassment policy prohibiting sex between teachers and students? The school district did. What does it matter whether the sex occurred on school property or during school hours? Well, because the school district polices sexual harassment, the purpose of the policy is to address sexual harassment in the schools. But doesn't it cover sex with students outside of school hours if it involves a teacher and a student? Arguably, I'm sure that it would. But, you know, that again gets back to the point of how do we police something that occurs off of our campuses, on weekends, during the evenings, that sort of thing, without obtaining or being able to obtain reliable information from informants. Getting back to my point, the school district, under the facts which the district court adopted, which were reasonable in my opinion, properly found that the plaintiffs had failed to carry their burden with respect to the Title IX claim under GESPR, that there was no actual notice to the school district, and even if there was, there certainly was no deliberate indifference by the school district in this particular case. Again, I think the Court needs to look at the evidence from the standpoint of, on the actual notice issue, what makes consistent sense based on the testimony of White and Hill. And what makes consistent sense is that Ms. White did not come to Mr. Hill until at least the week of May 19. But isn't that your closing argument to the jury? I mean, the problem I'm having in hearing it is we have to view the evidence in the light most favorable to the plaintiff. And if the evidence could plausibly support his version that the notice occurred earlier, you may have a dynamite closing argument to convince the jury that nothing improper occurred. But on summary judgment, we can't reach that same conclusion that you're urging us to reach. Well, I disagree because I believe that the evidence that you're relying on from Mr. Potter and Mr. Simmons is just not credible when compared. But that's a credibility determination. I can't make that determination at this stage of the case. I understand. Okay. With respect to the negligent hiring claim, which is the only State law claim remaining, I wanted to raise the point which I believe was raised during Mr. Hawley's argument of the Estes case and the discretionary immunity statute which applies. In Nevada, NRS 41.032 provides discretionary immunity to public entities and their own decisions involving personal deliberation and judgment, which the Court has found in Estes involves hiring decisions. And so I believe that the negligent hiring claim, regardless of what the facts may show Even if there is not a discretionary function immunity, assume for the moment and for purposes of this question only that there is none, has the school district complied with whatever negligence-based duty it has by sending his fingerprints off to the central repository? Yes. And the reason is, and it's addressed, I believe, quite well. It was addressed well in our summary judgment motion. It's also with respect to our brief here on appeal. The plaintiffs in this case have not followed the statutes to their logical conclusion or followed them through. Under NRS 391.100, a school district has a responsibility to obtain fingerprints from an applicant for a position. In this case, Mr. Leftley provided his fingerprints. The school district has the duty at that point to send those fingerprints on to the central repository in the State, which is the Highway Patrol Department, which it did. And it made a request with respect to those prints that any reports of sexual misconduct be the district be informed of those types of. And that report comes back clear. Or maybe there's none that comes back. In any event, nothing adverse comes back as a result. Right. And under NRS 179A, that's Chapter 179A, that was what the notice was under. Under that specific statute, that puts the burden then on the central repository if it finds nothing to then forward the prints on to the FBI. It's not on the school district. It was on the Highway Patrol. Your Honors, I believe that the evidence supports the finding of affirmance with respect to Judge Dawson's order, and we would ask that you do so. Thank you very much. Thank you. Would you like a minute? Just briefly, Your Honor. Thank you. With regard to whether or not Mr. Leftley actually worked after May 3rd of 1997, I would point the Court to the appellee's excerpts of the record, pages 62 to 63. They establish that Mr. Leftley did indeed work at the school district. The handwriting is, as a substitute teacher, for full days on both the 16th and the 23rd, the dates of the assault here. The handwriting on those particular reports indicates that at least one of those days was at the school district. The other handwriting is a little ambiguous on that point. The one thing that has been overlooked here is the testimony of Sandy Barbero, the marriage and family therapist who testified that what Leftley was doing, in a sense, was consistent with a pedophile grooming his victims. What the Nye County School District's inaction after being informed of Leftley's activities did was allow Mr. Leftley to continue grooming Mr. Bell and others for his lascivious conduct. Ms. Barbero specifically testified, in fact, that a substitute teacher position is second only to that of a scout leader for a pedophile. And this is what happened in this case, unfortunately. With that, Your Honor, I would submit the case if there are no questions. Thank you very much. Thank both counsel for their argument. The case of Bell v. Harge is now submitted.
judges: Canby, W. Fletcher, Tallman